IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DANNY PEDERSEN, as Personal Representative of the Estate of Robert L. Lindsay; BETTY L. RADOVICH; WANDA WOODWICK; and ROSALIE KIERNAN, as Personal Representative of the Estate of Rebecca Nicholson; individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation,<br><br>Defendant. | CV-19-29-GF-BMM<br><br><br>ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS AND DENYING DEFENDANT'S MOTION TO CERTIFY QUESTIONS OF LAW TO THE MONTANA SUPREME COURT |

## INTRODUCTION

Plaintiffs Betty Radovich and Wanda Woodwick and decedents Robert Lindsay and Rebecca Nicholson (collectively, "Plaintiffs") sustained injuries in separate automobile accidents while insured under automobile insurance policies issued by State Farm Mutual Automobile Insurance Company ("State Farm"). The negligent party in each accident possessed insufficient liability coverage to compensate Plaintiffs fully for their damages. Plaintiffs' automobile insurance

1

policies included liability coverage and uninsured motorist (UM) coverage, but did not include underinsured motorist (UIM) coverage.

Plaintiffs allege that their State Farm insurance agents acted negligently by failing to explain and offer UIM coverage to them. (Doc. 44.) Plaintiffs claim that they would have purchased UIM coverage if their insurance agents had offered it. Plaintiffs contend that their insurance agents breached their common law duty of reasonable care when they failed to explain and offer UIM coverage. Plaintiffs have asserted claims against State Farm for declaratory relief, negligence, professional negligence, deceit, common law bad faith, and actual malice. (Doc. 44 at 27-39.)

State Farm has moved to dismiss all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). (Doc. 11.) State Farm argues that the Court should dismiss Plaintiffs' claims because the insurance agents had no legal obligation to explain and offer UIM coverage to Plaintiffs. (Doc. 12.) The Court referred State Farm's motion to United States Magistrate Judge Johnston under 28 U.S.C. § 636(b)(1)(B) for findings and recommendations. (Doc. 8.)

Judge Johnston issued his Findings and Recommendations on March 18, 2020. (Doc. 52.) Judge Johnston determined that an insured, in some situations, may have a special relationship with his or her insurance agent that would give rise to an obligation of the insurance agent to explain and offer UIM coverage. (Doc.

52 at 11-12.) Judge Johnston accordingly recommended that the Court deny State Farm's Motion to Dismiss (Doc. 11). (Doc. 52 at 12.)

## BACKGROUND

Plaintiffs allege in their Amended Complaint (Doc. 44) that their State Farm insurance agents had a duty to explain and offer UIM coverage because their State Farm agents had "encouraged [them] to trust, value and rely on their specialized insurance knowledge" and they "relied on [their] agent[s] for advice on which coverages were necessary to protect [them] from catastrophic losses and damages. (Doc. 44 at ¶¶ 56, 57, 65, 66, 75, 76, 84 and 85.) State Farm argued in support of its motion to dismiss that Plaintiffs have failed to allege facts that could "give rise to [a] purported duty to offer and explain UIM coverage." (Doc. 47 at 12.)

Judge Johnston understood that Plaintiffs are alleging that their State Farm agents had a duty to explain and offer UIM coverage because they shared a special relationship, even though Plaintiffs did not use the words "special relationship." (Doc. 52 at 6.) Plaintiffs argue State Farm agents held themselves out as experts in the field of automobile insurance and encouraged Plaintiffs to trust, value, and rely on that expertise. Plaintiffs assert that they did rely, in fact, on their State Farm agent's expertise regarding the coverages that they needed. (Doc. 44 at ¶¶ 56, 57, 65, 66, 75, 76, 84 and 85.)

Judge Johnston explained that whether an insurance agent is obligated to explain and offer UIM coverage when he or she shares a special relationship with an insured presents an issue of first impression in Montana. (Doc. 52 at 6.) A federal court sitting in diversity in Montana must predict how the Montana Supreme Court would decide an issue of first impression. *See Medical Laboratory Mgmt. Consultants, Inc.*, 306 F.3d at 812. The federal court may look to Montana law and to well-reasoned decisions from other jurisdictions when considering an issue of first impression. *Burlington Ins. Co. v. Oceanic Design & Construction, Inc.*, 383 F.3d 940, 944 (9th Cir. 2004).

Judge Johnston noted that an insurance agent owes an insured a duty of ordinary care under Montana common law. (Doc. 52 at 7-8); *Fillinger v. Northwestern Agency, Inc. of Great Falls*, 938 P.2d 1347, 1355-56 (Mont. 1997). Courts generally have limited this duty to an obligation to obtain the insurance coverage that the insured directs the agent to procure. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 300 P.3d 1149, 1153 (Mont. 2013); *Monroe v. Cogswell Agency*, 234 P.3d 79, 86 (Mont. 2010). That is, the scope of the agent's duty depends on what the insured asks the agent to do. *Bailey*, 300 P.3d at 1154. This duty of ordinary care that an insurance agent owes to an insured does not include an absolute duty to explain and offer optional UIM coverage. *See Monroe*, 234 P.3d at 86.

4

Judge Johnston reasoned further that an obligation to explain and offer UIM coverage could arise based on the facts presented in a particular case, even though the duty of ordinary care that an insurer owes to an insured does not include an absolute obligation to explain and offer UIM coverage. (Doc. 52 at 8); *Moss v. State Farm Mut. Auto. Ins. Co.*, CV 99-124-GF-DWM, 10 (D. Mont. March 21, 2001) (concluding that an insurance agent's duty may include an obligation to offer UIM coverage under certain circumstances). Courts from other jurisdictions generally agree that an insurance agent's duty of ordinary care may include an obligation to explain and offer optional coverages if the insurance agent engaged in a special relationship with the insured that went beyond the standard insurer-insured relationship. *See, e.g.*, *Sintros v. Hamon*, 810 A.2d 553, 555 (N.H. 2002) (collecting cases); *Tiara Condominium Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1280-81 (S.D. Fla. 2014); *Franklin County Commission v. Madden*, 2019 WL 2716310 *3 (N.D. Ala. June 28, 2019); *Somnus Mattress Corp. v. Hilson*, 280 So. 3d 373, 384-85 (Ala. 2018); *Wilson Works, Inc. v. Great American Insurance Group*, 2012 WL 12960778 * 4 (N.D. W.V. June 28, 2012); *Nelson v. Davidson*, 456 N.W.2d 343, 347 (Wis. 1990). Whether a special relationship exists in a particular case depends on the facts and circumstances regarding the insurer-insured relationship. *Sintros*, 810 A.2d at 556. Judge Johnston expressed confidence that the Montana Supreme Court would agree that

5

an obligation to explain and offer optional insurance coverages could arise when an insurance agent and his client share a special relationship. (Doc. 52 at 11.)

Judge Johnston discussed that a court may find a special relationship triggering an enhanced obligation to advise an insured about optional coverages in various situations, including where the agent held himself out as having expertise in the field of insurance being sought by the insured, and the insured relied on the agent's representations regarding the coverage needed. (Doc. 52 at 10 (citing *Sintros*, 810 A.2d at 556; *Marsh*, 991 F. Supp. 2d at 1281).) Judge Johnston took as true all of the allegations in Plaintiffs' Amended Complaint and concluded that Plaintiffs alleged sufficiently a special relationship that could give rise to an obligation to explain and offer UIM coverage. (Doc. 52 at 10-11.) Plaintiffs allege that their State Farm agents "encouraged [them] to trust, value and rely on their specialized knowledge," and that they "relied on [their] agent[s] for advise" regarding their insurance coverage needs. (Doc. 44 at ¶¶ 56, 57, 65, 66, 75, 76, 84, and 85.) Judge Johnston noted that facts developed during discovery would reveal whether each Plaintiff had a special relationship with his or her State Farm agent. (Doc. 52 at 12.) He recommended that the Court deny State Farm's motion to dismiss. (*Id.*)

## DISCUSSION

State Farm has filed an objection to Judge Johnston's Findings and Recommendations. (Doc. 54.) Plaintiffs have filed a Motion to Modify Judge Johnston's Findings and Recommendations. (Doc. 55.) State Farm also has filed a Motion to Certify Questions of Law to the Montana Supreme Court. (Doc. 57.) Plaintiffs oppose State Farm's motion to certify. (Doc. 63.) The Court heard argument on May 20, 2020, and will now address, in turn, the parties' arguments about Judge Johnston's Findings and Recommendations and State Farm's Motion to Certify.

## I.   JUDGE JOHNSTON'S FINDINGS AND RECOMMENDATIONS

### a. Applicable Law

Plaintiffs have invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332. The Court will apply Montana substantive law and federal procedural law. *See Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate under Rule 12(b)(6) if the complaint asserts claims that are not cognizable as a matter of law, or if the complaint lacks sufficient facts

to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim appears plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Factual allegations that permit the court only to infer "the mere possibility of misconduct" fall short. *Id.* at 679. When evaluating a Rule 12(b)(6) motion, the court must accept as true all allegations of material fact contained in the complaint. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). The court is not required, however, to accept conclusory allegations as true. *Id.*

The Court reviews de novo those Findings and Recommendations to which a party timely objected. 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which the party did not specifically object. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

### b.  State Farm's Objections

State Farm raises four specific objections to Judge Johnston's Findings and Recommendations. (Doc. 54.) The Court addresses the four specific objections.

State Farm first argues that Plaintiffs did not raise the question of whether a special relationship gives rise to a heightened duty. As a result, State Farm contends that the Court should not consider the issue. (Doc. 54 at 11.)

State Farm next asserts that the special relationship exception is inconsistent with Montana law. (Doc. 54 at 12.) State Farm asserts that Montana courts have refused to create a heightened duty of care based on a special relationship and that no statutory or public policy justification exists for such a rule. (Doc. 54 at 12-21.) Third, State Farm argues that, even if the Court adopts the special relationship test, Plaintiffs have failed to plead facts that satisfy the test. (Doc. 54 at 21-25.) State Farm finally argues that the Findings and Recommendations failed to rule on State Farm's arguments regarding its motion to dismiss Plaintiffs' other claims. (Doc. 54 at 25-28.) State Farm had offered separate bases for the dismissal of Plaintiffs' claims one, three, four, and five. (Doc. 54 at 26 (citing Docs. 12 & 47).)

### c.  Plaintiffs' Motion to Modify

Plaintiffs have filed a motion to modify Judge Johnston's Findings and Recommendations. (Doc. 55.) Plaintiffs assert that Judge Johnston acted prematurely in defining the scope of State Farm's duty of care. (Doc. 56 at 9.) Judge Johnston concluded that an insurance agent does not possess an absolute obligation to explain and offer UIM coverage, but that an obligation may arise based on the facts presented in a particular case. (Doc. 52 at 8.) Plaintiffs seek a

ruling that State Farm agents possess an absolute obligation to explain and offer optional UIM coverage. (Doc. 56 at 9.) Accordingly, Plaintiffs assert that the Court should defer ruling on the scope of State Farm's duty until the parties have presented expert testimony on the record. (Doc. 56 at 9.)

### d. Analysis

Judge Johnston analyzed Montana insurance law and case law from other jurisdictions and concluded that an insurance agent's duty of ordinary care may include an obligation to explain and offer optional UIM coverage if the insurance agent and insured had a special relationship that went beyond the standard insurer-insured relationship. (Doc. 52 at 9-12.) Both parties disagree with Judge Johnston's conclusion, but for different reasons. State Farm asserts that Judge Johnston should not have considered whether a special relationship gives rise to a duty because Plaintiffs did not raise the question. (Doc. 54 at 11.) Plaintiffs respond that Judge Johnston acted prematurely because they plan to present expert testimony to establish that an insurance agent's duty of ordinary care includes the obligation to offer and explain UIM coverage to existing and new customers, regardless of the relationship between the insurer and insured. (Doc. 62 at 13-14.) State Farm further asserts that the special relationship exception conflicts with Montana law. (Doc. 54 at 12.)

10

The Court has reviewed de novo Judge Johnston's analysis and conclusion that an insurance agent's duty of ordinary care may include an obligation to explain and offer optional UIM coverage if the insurance agent and insured had a special relationship. *See* 28 U.S.C. § 636(b)(1). The Court agrees with Judge Johnston. Montana statutory law requires an insurer to provide an insured with UM coverage unless the insured specifically rejects it. Mont. Code Ann. § 33-23-201. No Montana statute requires an insurer to offer optional UIM coverage to the insured. *See Farmers Alliance Mutual Insurance Co. v. Holeman*, 924 P.2d 1315, 1318-19 (Mont. 1996); *Grier v. Nationwide Mutual Insurance Co.*, 812 P.2d 347, 349 (Mont. 1991).

An insurance agent owes an insured a duty of ordinary care under Montana common law. *Fillinger v. Northwestern Agency, Inc. of Great Falls*, 938 P.2d 1347, 1355-56 (Mont. 1997). This duty of ordinary care generally involves a duty to obtain the insurance coverage that the insured directs the agent to procure. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 300 P.3d 1149, 1153 (Mont. 2013); *Monroe v. Cogswell Agency*, 234 P.3d 79, 86 (Mont. 2010). Thus, the scope of the agent's duty is defined by what the insured asks the agent to do. *Bailey*, 300 P.3d at 1154; *Dulaney v. State Farm Fire and Cas. Ins. Co.*, 324 P.3d 1211, 1215-16 (Mont. 2014). When it comes to automobile insurance, an insurance agent does not

owe an absolute duty to explain and offer optional UIM coverage. *See Monroe*, 234 P.3d 86.

The Montana Supreme Court never has analyzed directly whether an insurance agent possesses a duty to explain and offer optional UIM coverage. The Montana Supreme Court has recognized that certain situations exist where an insurance agent may have an obligation to explain or offer UIM coverage. In *Bailey v. State Farm*, 300 P.3d at 1151, the Baileys moved from Oregon, where they had been State Farm customers for many years, to Montana. The couple went to a State Farm Agency in Cut Bank, Montana, where an insurance agent assisted them. The Baileys remembered presenting their Oregon State Farm insurance cards to the agent and requesting that the agent transfer to Montana the same coverage that they had carried in Oregon. *Id.* The agent did not remember her specific conversation with the Baileys, but noted that it was her habit and practice to review UIM coverage with new customers. *Id.*

The Montana automobile insurance policy that the agent procured for the Baileys did not match their Oregon policy. *Id.* at 1152. Notably, the Baileys' Montana policy did not include UIM coverage, while their Oregon policy had included mandatory UIM coverage under Oregon law with limits of $300,000 per person, or $500,000 per occurrence. The Baileys contended that State Farm acted negligently in failing to obtain UIM coverage for them. *Id.* Montana law, unlike

12

Oregon, does not mandate UIM coverage. The Montana Supreme Court reviewed an Idaho Supreme Court decision that concluded the scope of an insurance company's duty depends on what the insured asked the agent to provide. *Id.* at 1154 (citing *Featherston v. Allstate Ins. Co.*, 875 P.2d 937, 940 (Idaho 1994)). The Montana Supreme Court determined that genuine issues of material fact existed as to whether State Farm acted negligently in transferring the Baileys' Oregon policy to Montana without having obtained UIM coverage. *Id.* at 1154-55.

The Montana Supreme Court decided *Dulaney v. State Farm*, 324 P.3d at 1212, one year after *Bailey*. Deborah Dulaney operated a floral shop that she had insured under a State Farm insurance policy. *Dulaney*, 324 P.3d at 1212. Dulaney contended that when she was selecting her coverage she told her State Farm insurance agent that she had "absolutely no idea" what the property's value was and that she wanted the agent to view the property himself. *Id.* The agent contended that Dulaney had told him that her former business property limit was sufficient. *Id.* at 1213. A fire destroyed Dulaney's new floral shop. *Id.*

Dulaney brought a negligence suit against State Farm in which she alleged that the agent had a duty to ascertain the value of Dulaney's business property and inventory in order to make sure that her insurance policy adequately would cover her needs. *Id.* at 1214. The Montana Supreme Court determined that Dulaney needed to present expert testimony to identify the standard of care that binds an

13

insurance agent. *Id.* The court distinguished Dulaney's circumstances from those in *Fillinger*, 938 P.2d at 1355-56, where the court had determined that an insurance agent owes an insured a duty of ordinary care under Montana common law. *Dulaney*, 324 P.3d at 1215.

*Fillinger* presented the question of whether an insurance agent provided the insureds with the coverage that they requested. Thus, the plaintiff in *Fillinger* did not need to present expert testimony to establish the standard of care because "the determination of whether an insurance agent reasonably fulfilled his or her duty and procured the coverage requested is easily within the common experience and knowledge of lay jurors." *Fillinger*, 938 P.2d at 1355. In *Dulaney*, by contrast, Dulaney's damages allegedly resulted from the agent's failure to procure a policy that adequately covered her business assets, rather than from the agent's failure to procure a specific type of policy. *Dulaney*, 324 P.3d at 1215. The question of duty in *Dulaney* went beyond that articulated in *Fillinger* and required expert testimony to establish the relevant factors that an insurance agent should consider when procuring insurance coverage in certain circumstances. *Id.*

Judge Johnston's conclusion that the Montana Supreme Court would conclude that a special relationship between an insurance agent and an insured could give rise to a duty to explain and offer UIM coverage comports with *Fillinger*, *Bailey*, *Dulaney*. (*See* Doc. 52 at 11.) The Montana Supreme Court has

14

emphasized repeatedly that the duty an insurance agent owes to an insured proves fact-dependent—that is, an agent's duty in one situation may differ from an agent's duty in another situation. *See, e.g.*, *Dulaney*, 324 P.3d at 1215; *Bailey*, 300 P.3d at 1151-55; *Fillinger*, 938 P.2d at 1355-56. On the most basic level, an agent has the duty to obtain for an insured the insurance coverage that the insured requests. *Fillinger*, 938 P.2d at 1355-56. An agent's duty changes from insured to insured based on the coverage requested. The inquiry becomes more complicated when additional factors get added, such as a business owner's general request for coverage that adequately will cover her business assets. *See Dulaney*, 324 P.3d at 1215.

The Montana Supreme Court also has recognized that the relationship between an insured and an insurer represents an important factor to consider when examining an insured's duty to read an insurance contract. For instance, the court recognized in *Robertus v. Farmers Union Mut. Ins. Co.*, 189 P.3d 582 (Mont. 2008), that an insured's duty to read an insurance policy does not prove absolute. Instead, "the extent of an insured's obligation to read the policy depends upon what is reasonable under the facts and circumstances of each case." *Robertus*, 189 P.3d at 591 (quoting *Thomas v. Nw. Nat. Ins. Co.*, 973 P.2d 804, 808 (Mont. 1998)). To use a special relationship test to determine when an insurance agent owes an insured the duty to offer an explain UIM coverage—based on the facts

15

and circumstances of each case—comports with the Montana Supreme Court's fact-intensive duty analysis in the insurance context. *See, e.g.*, *Dulaney*, 324 P.3d at 1215; *Bailey*, 300 P.3d at 1151-55; *Fillinger*, 938 P.2d at 1355-56.

This Court's decision in *Moss* further supports Judge Johnston's determination. This Court analyzed Montana common law and determined that the duty of ordinary care that an insurance agent owes to an insured may include an obligation to offer UIM coverage under certain circumstances. *Moss* at 10. State Farm's company manuals in *Moss* directed its insurance agents to offer UIM coverage to prospective insureds. The insurance agent failed to offer UIM coverage to the client. *Moss* at 10-11. This Court ruled that the insurance agent's failure to follow the company manual represented evidence that the jury could consider in determining whether the insurance agent had breached her duty of ordinary care. *Id.*

In formulating the special relationship inquiry, Judge Johnston relied appropriately on case law from other jurisdictions that similarly require an insurer to secure the insurance that an insured requests. For example, the district court noted in *Marsh* that Florida law long has recognized that an insurance broker owes an obligation to an insured to secure coverage at the client's direction. *Marsh*, 991 F. Supp. 2d at 1280, *compare Fillinger*, 938 P.2d at 1355-56. The district court went on to determine that an insurer has a duty to advise the insured on an

16

appropriate level of coverage, or affirmatively to recommend specific types and amounts of coverage, when an insurer encourages and engages in a special relationship with his client. *Marsh*, 991 F. Supp. 2d at 1281. Montana law recognizes a similar ordinary standard of care, and it makes sense to similarly expand an insurance agent's duty to an insured when a special relationship exists.

Because the special relationship test is rooted in legitimate legal analysis from other courts and because the special relationship test comports with Montana Supreme Court precedent, State Farm's first and second objections fail, as does Plaintiffs' motion to modify. Judge Johnston was not bound by the parties' proposed analyses—he remained free to conduct his own research and formulate a legal analysis that he believed best set forth the law in this area.

State Farm's third objection, that Plaintiffs have not pled facts to indicate that they had a special relationship with their State Farm agents, also fails. (*See* Doc. 54 at 21.) Judge Johnston set forth the special relationship analysis from *Sintros*, 810 A.2d at 556, and concluded that Plaintiffs had alleged sufficiently that the second type of special relationship existed: that the "agent held himself out as having experience in the field of insurance being sought by the insured, and the insured relied on the agent's representations regarding the coverage needed." (Doc. 52 at 10-11 (citing *Sintros*, 810 A.2d at 556).)

State Farm asserts that Plaintiffs failed to allege specific facts because

*Sintros* made clear that "an insured must do more than allege facts showing the standard insurer-insured relationship and further confirmed that the alleged existence of a special relationship still 'depends upon the particular relationship between the parties and is determined on a case-by-case basis.'" (Doc. 54 at 21-22 (quoting *Sintros*, 810 A.2d at 556).) *Sintros* also requires the insured to demonstrate that he or she justifiability relied upon that relationship. (Doc. 54 at 22.) The Supreme Court of New Hampshire determined in *Sintros* that no duty existed when the Plaintiffs had not set forth facts establishing a special relationship at summary judgment. *Sintros*, 810 A.2d at 557.

This dispute comes to the Court at the motion to dismiss phase. Plaintiffs' claims may proceed as long as they have alleged sufficient factual matter "to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678-79. Plaintiffs have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* at 678. Plaintiffs have alleged that their State Farm agents "encouraged [them] to trust, value and rely on their specialized knowledge," and that they "relied on [their] agent[s] for advise" regarding their insurance coverage needs. (Doc. 44 at ¶¶ 56, 57, 65, 66, 75, 76, 84, and 85.) These allegations prove sufficient to survive State Farm's motion to dismiss. The parties will have the opportunity during discovery to develop the factual record.

18

State Farm's fourth objection deals with State Farm's motions to dismiss Counts One, Three, Four, and Five. (Doc. 54 at 25 (citing Docs. 12 & 47).) Count One alleges a claim for declaratory judgment; Count Three alleges a claim for breach of the professional standard of care; Count Four alleges a claim for deceit; and Count Five alleges a claim for common law bad faith. (Doc. 44 at 27-38.) State Farm faults Judge Johnston for not addressing its motions to dismiss those counts in addition to its motion to dismiss, Plaintiffs' general negligence claim in Count Two. (Doc. 54 at 25.)

Regarding Count One, the parties dispute whether declaratory judgment is appropriate in this case where the Court is not determining rights under a contract, statute, or other writing. (*Compare* State Farm's Doc. 54 at 26 (citing Mont. Code. Ann. § 27-8-202 (who may obtain declaratory judgment); *Tarlton v. Kaufman*, 199 P.3d 263, 271 (Mont. 2008) (reciting the purpose of declaratory relief: to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"), *with* Plaintiffs' Doc. 62 at 19 (stating that declaratory relief remains available to determine rights when any justiciable controversy exists but not citing any negligence cases in support of that contention).) State Farm also asserts that declaratory relief is not available where disputed material facts exist. (Doc. 54 at 26 (citing *Teeter v. Mid-Cent. Ins. Co.*, 406 P.3d 464, 468 (Mont. 2017)).)

The Court agrees with State Farm's assessment of Plaintiffs' declaratory judgment claim. Plaintiffs clearly stated during argument that their claims arise in tort, not contract, law. *See also Tarlton*, 199 P.3d at 271. Even if this were an appropriate case for declaratory judgment, the Court remains unwilling to declare that an insurance agent always possesses a duty to offer UIM coverage. The Court will dismiss Count One.

Plaintiffs allege in Count Three that State Farm breached the professional standard of care that insurance agents owe to insureds. (Doc. 44 at 32.) This claim follows the general negligence claim in Count Two. (*See Id.* at 29.) Four elements must be present to support a negligence claim: duty, breach of that duty, causation, and damages. *Massee v. Thompson*, 90 P.3d 394, 400 (Mont. 2004). State Farm asserts that Count Three is not an appropriate stand-alone claim under Montana law. (Doc. 54 at 26.) The Court agrees. Plaintiffs allege in Count Two that State Farm acted negligently. Count Two therefore subsumes the allegation in Count Three of an alleged breach of a specific duty. The Court will dismiss Count Three. *See M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) (noting that district courts have the power to dismiss duplicative claims).

Plaintiffs allege deceit in Count Four. (Doc. 44 at 35.) Deceit involves either "the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of

20

that fact." Mont. Code Ann. § 27-1-712(2)(c). Plaintiffs allege that State Farm deceived Plaintiffs by failing to inform them of the fact that their polices did not cover UIM coverage. (Doc. 44 at 35.) "Deceit is essentially grounded in fraud therefore, Rule 9(b)'s heightened pleading standard apples." *Pfau v. Mortenson*, 858 F. Supp. 2d 1150 (D. Mont. 2012). State Farm argues that Plaintiffs have failed to allege the "who, what, where, or how," relating to their deceit claim. (Doc. 54 at 27.)

Plaintiffs have alleged sufficient facts to withstand State Farm's motion to dismiss as it relates to them specifically. Plaintiffs state that their State Farm agents failed to inform them that their polices did not carry UIM coverage and that State Farm agents had a duty to offer and explain UIM coverage. (Doc. 44 at 35-36.) As discussed above, the duty to offer and explain UIM coverage may arise in some situations where a special relationship exists. Plaintiffs' attempt to assert a universal duty to offer UIM coverage on behalf of a class fails, however, due to the fact-intensive nature of the duty inquiry. Accordingly, Plaintiffs' deceit claim as it relates to "those similarly situated" also fails. The Court will not dismiss Count Four as it relates to Plaintiffs specifically.

In Count Five, Plaintiffs allege that State Farm breached the common law duty not to act in bad faith. (Doc. 44 at 37.) Plaintiffs claim that State Farm remains subject to liability for bad faith because its agents have concealed the

21

absence of UIM coverage from their insureds' personal automobile policies. (*Id.*)
State Farm asserts that Plaintiffs offer only "threadbare recitals" without alleging
any facts to show that State Farm acted in bad faith. (Doc. 54 at 28 (quoting *Iqbal*,
556 U.S. at 678).) The Court disagrees. Plaintiffs have alleged that their personal
automobile insurance policies issued by State Farm lack UIM coverage and lack
written rejections of UIM coverage by the insureds. (Doc. 44 at 38.) Plaintiffs
further allege that State Farm's concealment of the absence of UIM coverage
represents a breach of the common law duty of good faith and fair dealing. (*Id.*) At
this point in the proceeding, Plaintiffs allege facts sufficient to withstand State
Farm's motion to dismiss Count Five as it relates to Plaintiffs specifically.
Plaintiffs' common law bad faith claim as it relates to "those similarly situated"
fails for the same reasons the deceit claim fails on behalf of "those similarly
situated."

## II.   STATE FARM'S MOTION TO CERTIFY QUESTIONS OF LAW TO THE MONTANA SUPREME COURT

State Farm requests that the Court certify four questions of law to the
Montana Supreme Court. (Doc. 57 at 2-3.) State Farm points out that no Montana
court ever has considered the issue of whether a special relationship could give rise
to a duty to offer and explain UIM coverage. (Doc. 57 at 2.) State Farm seeks to
have the Montana Supreme Court address four questions related to that issue. (*Id.*)
Plaintiffs oppose State Farm's motion to certify. (Doc. 63.)

The Montana Rules of Appellate Procedure provide that a federal district court in Montana may certify questions to the Montana Supreme Court for instruction. Mont. R. App. P. 15(3). Certification proves proper only in certain situations: (1) "[t]he answer may be determinative of an issue in pending litigation in the certifying court;" and (2) "there is no controlling appellate decision, constitutional provision, or statute of [Montana]." *Id.* A federal court possesses no obligation to certify a question when there exists uncertainty, but doing so may save time, energy, and resources. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974).

State Farm argues that its request meets both criteria. (Doc. 58 at 7-8.) First, the questions that it seeks to certify may be dispositive of this case. Plaintiffs' Amended Complaint would fail if the Montana Supreme Court determined that a special relationship did not give rise to a duty to offer and explain UIM coverage. *See* Mont. R. App. P. 15(b)(a). Second, there indisputably exists no Montana state court decision, statute, or constitutional provision on point. *See* Mont. R. App. P. 15(3)(b).

The Court does not disagree with State Farm that the circumstances here could render certification to the Montana Supreme Court appropriate under Montana Rule of Appellate Procedure 15(3). As explained above, however, Judge Johnston's Findings and Recommendations prove consistent with existing

23

Montana law. The Montana Supreme Court repeatedly has focused its duty inquiry on the relationship between an insurer and an insured. *See, e.g.*, *Dulaney*, 324 P.3d at 1215; *Bailey*, 300 P.3d at 1151-55; *Fillinger*, 938 P.2d at 1355-56. Judge Johnston's conclusion that an insurance agent could owe an insured a duty to offer and explain UIM coverage if a special relationship exists between the two proves entirely consistent with that precedent.

The special relationship examination necessarily would be fact-dependent and requires a case-by-case inquiry into the circumstances surrounding the relationship. At this motion-to-dismiss stage of the proceeding, the fact-dependent nature of the inquiry renders certification to the Montana Supreme Court marginally helpful, at best. The Court can predict with near certainty the Montana Supreme Court's answer to State Farm's proposed questions: "It depends." Some situations may exist where a special relationship exists between the insurer and the insured that could give rise to a duty to offer and explain UIM coverage. Asking the Montana Supreme Court to answer the questions at this point in the proceeding would not save time, energy, and resources—in fact, it unnecessarily would expend the time, energy, and resources of this Court, the Montana Supreme Court, and the parties. *See Lehman Bros.*, 416 U.S. at 390-91. The Court will deny State Farm's motion to certify questions of law to the Montana Supreme Court.

## ORDER

For the reasons set forth above, it is hereby **ORDERED** that:

1. Judge Johnston's Findings and Recommendations (Doc. 52) are

**ADOPTED**.

2. Plaintiffs' Motion to Modify Judge Johnston's Findings and

Recommendations (Doc. 55) is **DENIED**.

3. State Farm's Motion to Dismiss (Doc. 11) is **GRANTED, IN PART,** and

**DENIED, IN PART.** Claims One and Three in Plaintiffs' Amended Complaint

(Doc. 44) are **DISMISSED.**

4. State Farm's Motion to Certify Questions of Law to the Montana Supreme

Court (Doc. 57) is **DENIED**.

DATED this 2nd day of June, 2020.

_____
Brian Morris, Chief District Judge
United States District Court