IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

<table>
<tr><td>

DANNY PEDERSEN, as Personal
Representative of the Estate of Robert
L. Lindsay; BETTY L. RADOVICH;
WANDA WOODWICK; and
ROSALIE KIERNAN, as Personal
Representative of the Estate of Rebecca
Nicholson; individually and on behalf
of those similarly situated,

Plaintiffs,

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois Corporation,

Defendants.

</td><td>

CV 19-29-GF-BMM-JTJ


ORDER

</td></tr>
</table>

**INTRODUCTION**

Plaintiffs Betty Radovich, Wanda Woodwick and decedents Robert Lindsay and Rebecca Nicholson (collectively, "Plaintiffs") sustained injuries in separate automobile accidents while insured under automobile insurance policies issued by State Farm Mutual Automobile Insurance Company ("State Farm"). The negligent party in each accident possessed insufficient liability coverage to compensate Plaintiffs fully for their damages. Plaintiffs' automobile insurance policies included liability coverage and uninsured motorist (UM) coverage, but did not include

–1–

underinsured motorist (UIM) coverage. Plaintiffs allege that their State Farm insurance agents acted negligently by failing to explain and offer UIM coverage to them. (Doc. 44.) Plaintiffs claim that they would have purchased UIM coverage if their insurance agents had offered it. Plaintiffs contend that their insurance agents breached their common law duty of reasonable care when they failed to explain and offer UIM coverage. Plaintiffs have asserted claims against State Farm for declaratory relief, negligence, professional negligence, deceit, common law bad faith, and actual malice. (Doc. 44 at 27-39.)

The Court determined previously that State Farm agents possessed the duty to explain and offer UIM coverage only if a State Farm agent shared a special relationship with an individual Plaintiff. (Doc. 69 at 11-18.) Absent establishing a special relationship between the State Farm agent and the insured, Plaintiffs would fail to demonstrate that State Farm was required to explain and offer UIM coverage. (*Id.*)

Plaintiffs have sought reconsideration of the Court's determination that an insurance agent does not have a standard duty to explain and offer UIM coverage. The Court denied Plaintiffs request. (Doc. 202 at 2-5.) Plaintiffs now seek to certify this question to the Montana Supreme Court. The Court will deny Plaintiffs motion for the reasons discussed in Part I of this order.

Plaintiffs also have moved the Court to compel State Farm's compliance with Plaintiffs' discovery requests. Plaintiffs seek to record a State Farm agent that did not sell automobile insurance to the Plaintiffs as that agent interfaces with the State Farm insurance software. (Docs. 179 & 227.) Plaintiffs' second motion seeks to compel compliance with numerous other requests. (Doc. 229.) The Court will deny Plaintiffs motions to compel compliance for the reasons discussed in Part II of this order.

Plaintiffs additionally have moved for leave to file a second amended complaint. The Court will deny Plaintiffs' motion for lack of good cause as discussed in Part III of this order.

State Farm's motion for summary judgment (Doc. 214) is ripe for review. The Court will grant State Farm's motion for the reasons discussed in Part IV of this order.

Plaintiffs motion to certify a class (Doc. 262) is denied as moot, as discussed in Part V of this order.

## ANALYSIS

I.    **Plaintiffs' Motion to Certify Questions to the Montana State Supreme Court (Doc. 211)**

Plaintiffs request that the Court certify the following questions to the Montana Supreme Court:

- What is the common law duty of a Montana licensed insurance professional in a tort-based negligence cause of action?

- How is a breach of duty to be established in a tort-based negligence cause of action against a licensed insurance professional?

(Doc. 263 at 35.) The Court answered these questions previously. Magistrate Judge John T. Johnston determined that that an insurance agent owes an insured a duty of ordinary care under Montana common law and would be obligated to explain and offer UIM coverage only if the insured and insurance agent shared a special relationship. (Doc. 52 at 7-8, 11-12.) Plaintiffs objected to Magistrate Judge Johnston's Findings and Recommendations. (Doc. 55.)

The Court reviewed the Findings and Recommendations de novo. The Court agreed with Magistrate Judge Johnston's determination and adopted his findings and recommendations. (Doc. 69 at 9-22.) Plaintiffs subsequently filed a motion for leave to file a motion for reconsideration of the Court's adoption order. (Doc. 168.) The Court determined that Plaintiffs posed merely the same arguments made in their objection to Judge Johnston's Findings and Recommendations. The Court addressed those arguments once more and denied the motion for leave to file a motion for reconsideration. (Doc. 202.)

Plaintiffs now claim that certification of these questions would be appropriate because the issue presents important public policy ramifications and because the

Court purportedly erred in its interpretation of the Montana Supreme Court's prior rulings. (*See generally* Doc. 212.)

The Montana Rules of Appellate Procedure provide that a federal district court in Montana may certify questions to the Montana Supreme Court for instruction. Mont. R. App. P. 15(3). Certification proves proper only in certain situations: (1) "[t]he answer may be determinative of an issue in pending litigation in the certifying court;" and (2) "there is no controlling appellate decision, constitutional provision, or statute of [Montana]." *Id.* A federal court possesses no obligation to certify a question when there exists uncertainty, but doing so may save time, energy, and resources. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390- 91 (1974).

Little uncertainty exists that the Montana Supreme Court would agree that an insurance agent's duty is one of ordinary care. The Montana Supreme Court stated plainly in *Monroe v. Cogswell Agency*, 234 P.3d 79 (Mont. 2010), that the insurance agent's duty is to obtain insurance coverage "which an insured directs that agent to procure." *Monroe*, 234 P.3d. at 86. That outcome, as this Court has explained thrice now, is not surprising given that the Montana Supreme Court repeatedly has focused its duty inquiry on the relationship between an insurer and an insured. *See, e.g.*, *Dulaney v. State Farm Fire and Cas. Ins. Co.*, 324 P.3d 1211, 1215-16 (Mont. 2014); *Bailey v. State Farm Mut. Auto. Ins. Co.*, 300 P.3d 1149, 1151-55 (Mont. 2013); *Fillinger v. Northwestern Agency, Inc. of Great Falls*, 938 P.2d 1347, 1355-56

(Mont. 1997). Judge Johnston's conclusion that an insurance agent could owe an insured a duty to offer and explain UIM coverage if a special relationship exists between the two proves entirely consistent with Montana Supreme Court precedent.

At this late stage of the litigation, certifying Plaintiffs' questions to the Montana Supreme Court would not save time, energy, or judicial resources. To the contrary, certifying Plaintiffs' question now would only serve to delay this litigation. Plaintiffs waited for nearly two years to request certification of their question after the date of Judge Johnston's Findings and Recommendations. Certification would serve only to require the Montana Supreme Court to address a question that it has touched upon in multiple prior decisions, and that this Court has repeatedly analyzed. The Court can say with near certainty that certifying the questions presented by Plaintiffs would only cause an undue delay.

The Court will thus deny Plaintiffs' Motion to Certify Questions of Substantive Law to the Montana Supreme Court. (Doc. 211.)

## II.   Plaintiffs' Motion to Compel Compliance of State Farm Agent Riley McGiboney and State Farm to Subpoena for Attendance and Inspection (Docs. 179 & 227) and Motion to Compel (Doc. 229)

Plaintiffs move for the Court to compel compliance with their subpoena of State Farm Agent Riley McGiboney ("Agent McGiboney"). (Docs. 179 & 227.) Plaintiffs would require that Agent McGiboney demonstrate how State Farm agents use their software while interacting with clients and potential clients. Agent

McGiboney did not sell an automobile policy to any of the Plaintiffs. Plaintiffs have been given screenshots of the interface in the discovery process.

The Court previously heard argument on Plaintiffs' motion to compel the deposition of Agent McGiboney and to record Agent McGiboney's use of State Farm's computer and software used for State Farm automobile insurance applications. (Doc. 207.) The Court denied Plaintiffs' motion to compel, but allowed Plaintiffs to revisit the issue if "the screenshots of State Farm's electronic insurance application proved inadequate" after taking depositions of the State Farm agents that sold automobile insurance policies to the Plaintiffs. (*Id.* at 2.) Plaintiffs claim that the screenshots prove inadequate.

The screenshots of the insurance application—in conjunction with the depositions taken of the State Farm agents that actually sold automobile policies—provide sufficient information about State Farm's automobile insurance sales process. Plaintiffs have failed to state any reasonable need to observe how a State Farm agent—especially one who never served any of the Plaintiffs—works through the computer interface. Plaintiffs have had the opportunity to depose the agents that sold them automobile insurance, which would provide the best source of information available to determine whether a special relationship existed. No legitimate purpose would be furthered by this additional request.

Plaintiffs' second motion to compel requests that the Court direct State Farm to answer five of Plaintiffs' discovery requests. (*See* Doc. 229 at 3-4.) The Court first notes that Plaintiffs' second motion to compel fails to comply with the Court's scheduling order. This Court ordered that any motion to compel must be filed within 10 days after the Rule 37 meet-and-confer occurred. (Doc. 93 at ¶ 7.) The moving party also must certify they advised their clients "that the Court may require the loser to pay the opposing party's associated fees and costs." (*Id.*) Plaintiffs failed to file their motion in a timely manner. Plaintiffs state that their meet-and-confer with Defendants occurred on March 16, 2022, but they did not file their motion until April 6, 2022. Plaintiffs also provide no certification that they have advised their clients of the fees or costs associated with this motion. The Court would deny Plaintiffs motion for failure to comply with the procedural requirements for a motion to compel alone. *See Sundquist v. Ashland, Inc.*, No. CV-13-75-GFBMM-RKS, 2014 WL 12591681, at *1 (D. Mont. Oct. 9, 2014); L.R. 26.2 (c)(1), (2)(C)(ii).

Plaintiffs' motion also fails to demonstrate that any of the requests were not adequately answered by State Farm. Plaintiffs' Request for Production No. 1 asked State Farm to produce complete copies of all information for each of the named plaintiffs' from their State Farm agents' files, including insurance policies that predate the current insurance policies by 10 years. State Farm has provided Plaintiffs the information related to the named Plaintiffs insurance plans. Yet Plaintiffs

continue to request more. Plaintiffs specifically seek copies of their original "application" document. State Farm repeatedly has informed Plaintiffs that an original "application" document does not exist—the application process results in a series of separate data points indicating the totality of Plaintiffs insurance plan, all of which has been provided. Plaintiffs effectively ask State Farm to produce new documents that have never existed.

State Farm also has stated plainly that it does not create renewal application forms and that no UIM-related forms exist for the named Plaintiffs. This outcome makes sense in light of the fact that none of Plaintiffs elected UIM coverage. Plaintiffs complain essentially that documents that do not exist are not being produced. Plaintiffs have all of the information that State Farm is capable of providing related to this request. The Court cannot compel anything further.

Plaintiffs' Request for Production Nos. 4 and 6 requested the "manuals" related to the decision in *Moss v. State Farm Mut. Auto. Ins. Co.,* CV 99-124-GF-DWM, 10 (D. Mont. March 21, 2001), and all revisions to those manuals. State Farm produced all training documents related to UIM coverage for the State of Montana from 2007 onward and any UIM reference materials from 2001 onward. State Farm's production is sufficient given that Plaintiffs' interactions with State Farm did not begin until 2013. State Farm's production also comports with the Court's prior orders. (*See* Doc. 97 at 73.)

Plaintiffs' Interrogatory No. 2 and Request for Production No. 21 seek information about potential class members. Plaintiffs are not permitted to obtain a class list before certification. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). Plaintiffs do not seek class member information for any bearing that it might have on issues related to this case. Plaintiffs seek the class member information for precisely the reason it was not allowed by the Ninth Circuit in *Williams-Sonoma*—to find plaintiffs that may be able to adequately represent a class. (*See* Doc. 230 at 18 ("Other insureds may also be able to provide evidence of any and all factors relevant to the determination of a special relationship such as whether they believe their agent is a professional, gave them advice, and whether they relied on that advice.")). The Court bifurcated class discovery and discovery for the named Plaintiffs in light of the difficulty the Court predicted Plaintiffs would have to overcome in demonstrating a special relationship. (Doc. 92.)

Plaintiffs' Ninth Discovery Requests and Request for Admission No. 61 asked State Farm to admit that State Farm's Montana agents do not use written rejection forms. State Farm made that admission. Plaintiffs appear convinced that the forms do in fact exist, but provide no substantial reason for that belief. Once again, the Court cannot compel State Farm to produce documents that do not exist.

State Farm consistently has supplied Plaintiffs with relevant discovery, provided admissions when requested, and objected properly to Plaintiffs overly

broad requests. Plaintiffs' further requests for discovery are improper and well-beyond the needs of this case to demonstrate that a special relationship may have existed between Plaintiffs and their State Farm agents. The Court will thus deny Plaintiffs' motions to compel any further production. Discovery in this case is closed.

### III.   Plaintiffs' Motion for Leave to File a Second Amended Complaint (Doc. 260)

Plaintiffs seek leave to file a second amended Complaint. (Doc. 260.) Plaintiffs seek to add an additional Plaintiff, Carol Ramberg, to serve as a Fed. R. Civ. P. 23(b)(2) class representative; to substitute Randy Tarum for Danny Pedersen as personal representative for Robert Lindsay's estate; and to dismiss without prejudice Betty Radovich as a Plaintiff. (*Id.*) The deadline for the Parties to amend pleadings in this case was February 12, 2021. (Doc. 93 at 1.)

In situations where the deadline for amendments to the pleadings has passed, courts undertake a two-part inquiry to determine whether a party should be granted leave to amend. *See Butler v. Unified Life Ins. Co.*, 2018 WL 10811782 at *3-4 (D. Mont. 2018). The Court first must determine whether "good cause" exists under Rule 16(b)(4). Fed. R. Civ. P. 16(b)(4); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)*.* The "good cause" standard under Rule 16(b) primarily relies on the diligence of the party seeking the amendment. *Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Good cause to excuse noncompliance with the scheduling order exists only if the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 Amendment)). If the party seeking the extension was not diligent in bringing the counterclaim, the inquiry should end. *Johnson*, 975 F.2d at 609.

If good cause exists the Court turns to the Rule 15(a) standard for amendment. *Butler,* 2018 WL 10811782 at *3-4. The Ninth Circuit requires that courts observe five factors when evaluating whether good cause exists to grant a Rule 15 motion to amend pleadings: 1) bad faith; 2) undue delay; 3) prejudice to the opposing party; 4) futility of amendment; and 5) whether the moving party previously amended its complaint. *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737-38 (9th Cir. 2013). Courts generally consider prejudice the most important consideration. *Id.*

The Court determines that good cause to amend does not exist with respect to adding Carol Ramberg to their Complaint. Plaintiffs filed this motion fifteen months past the deadline to amend pleadings. Plaintiffs admit that the purpose of adding Carol Ramberg is to achieve standing necessary for injunctive relief. (*See* Doc. 261 at 4.) Plaintiffs should have been aware of the requirements of Fed. R. Civ. P. 23 at the onset of this litigation. Plaintiffs delayed adding a class representative for the

–12–

purpose of class action standing under Rule 23(b)(2). Plaintiffs supply no reason to suggest that Plaintiffs had good cause to wait and no explanation why Plaintiffs could not have amended their pleadings by the Court-mandated deadline. Plaintiffs failed to exercise diligence in seeking this amendment and so good cause does not exist under Fed. R. Civ. P. 16(b)(4).

The Court likewise finds that good cause does not exist to dismiss Betty Radovich without prejudice. Radovich participated in this case through discovery and only now asks to be removed from the case without prejudice. The Court notes that this motions comes after the filing of State Farm's motion for summary judgment. Plaintiffs state only that Radovich "concluded that her current circumstances are not beneficial to any class representation and has requested to terminate her involvement in this litigation." (Doc. 260 at 4.) Plaintiffs' explanation fails to demonstrate good cause to allow for dismissal without prejudice at this late stage. The Court will grant a motion to dismiss Radovich with prejudice should Plaintiffs file such a motion.

The Court will grant substitution of Randy Tarum for Danny Pedersen as personal representative for Robert Lindsay's estate. The Court will construe this request as a motion to substitute for a proper party. The Court will otherwise deny the motion for leave to file a second amended Complaint.

**IV.  State Farm's Motion for Summary Judgment (Doc. 214)**

State Farm moves for summary judgment on all claims. (Doc. 214) State Farm argues that none of the named Plaintiffs establish facts that could support the existence of a special relationship between Plaintiffs and the State Farm insurance agents. State Farm contends that, absent the duty to offer and explain UIM coverage, all of Plaintiffs' claims fail as a matter of law. The Court agrees for the reasons discussed below.

*Legal Standard*

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant satisfies its burden when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but [. . .] must set forth specific facts showing that there is a genuine issue

for trial." *Id.* at 248 (internal quotation marks omitted).

*Analysis*

### A.    Plaintiffs' Negligence and Standard of Care Claims

The Court previously determined that Plaintiffs' negligence claims required demonstrating the existence of a special relationship. (Doc. 69 at 11-18.) "[W]hether a 'special relationship' exists between two parties such as would give rise to a fiduciary duty is a question of law, not fact, for the relationship and the duty are two sides of the same coin." *McCoy v. First Citizens Bank*, 148 P.3d 677, 683 (Mont. 2006) (quoting *PTE v. United Banks*, 143 P.3d 442, (Mont. 2006)); *see also Wolfe v. Flathead Electric Cooperative, Inc.*, 2017 WL 8184352, at *4 (Mont. Dist. Ct. Dec. 21, 2017).

Under most circumstances, an insurance agent owes an insured a duty of ordinary care under Montana common law. *Fillinger v. Northwestern Agency, Inc. of Great Falls*, 938 P.2d 1347, 1355-56 (Mont. 1997). Courts generally have limited this duty to an obligation to obtain the insurance coverage that the insured directs the agent to procure. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 300 P.3d 1149, 1153 (Mont. 2013); *Monroe v. Cogswell Agency*, 234 P.3d 79, 86 (Mont. 2010); *Gunderson v. Liberty Mutual Ins.*, 468 P.3d 367, *6 (Mont. 2020). That is, the scope of the agent's duty depends on what the insured asks the agent to do. *Bailey*, 300 P.3d at 1154. This duty of ordinary care that an insurance agent owes to an insured

–15–

does not include an absolute duty to explain and offer optional UIM coverage, *see Monroe*, 234 P.3d at 86, but the facts of a particular case may cause a special relationship to arise. *See Moss v. State Farm Mut. Auto. Ins. Co.*, CV 99-124-GF-DWM, 10 (D. Mont. March 21, 2001) (concluding that an insurance agent's duty may include an obligation to offer UIM coverage under certain circumstances).

The Court's decision in *Moss* demonstrates one instance when a special relationship might exist. In *Moss*, the Court analyzed Montana common law and determined that the duty of ordinary care that an insurance agent owes to an insured may include an obligation to offer UIM coverage when the insurance company's manuals directed its insurance agents to offer UIM coverage to prospective insureds, but the insurance agent failed to offer that coverage. *Id.* at 10-11. The Court ruled that any failure by the insurance agent to follow the company manual represented evidence that the jury could consider in determining whether the insurance agent had breached her duty. *Id.*

Plaintiffs argue here that State Farm's policies recommend that its agents offer and explain UIM coverage. (Doc. 239 at 7-10.) The Court finds no support for this argument. The State Farm policy document that Plaintiffs cite plainly states that insurers are not required to offer UIM coverage in Montana. (*See* Doc. 230-5 at 19.) Plaintiffs fail to supply any other argument that might support the existence of a

special relationship that would require a State Farm Agent to explain and offer UIM coverage.

Plaintiffs present one alternative argument to a special relationship requiring that State Farm's agents explain and offer UIM coverage. In some instances, State Farm's agents voluntarily discuss UIM coverage with their clients. Plaintiffs argue that, by explaining what UIM coverage is and making it available, State Farm agents have voluntarily assumed a duty of care under an "affirmative action" theory. (Doc. 249 at 11.)

Plaintiffs misinterpret the relevant case law for the assumption of a special duty. Plaintiffs rely on *Maryland Casualty Co. v. Asbestos Claims Court*, 460 P.3d 882 (Mont. 2020), to support their assertion that a special duty exists in this case. (*See* Doc. 249 at 12-14.) In *Maryland Casualty*, a vermiculite mining company in Libby, Montana knowingly caused its workers to be exposed to asbestos. 460 P.3d at 288-90. The Montana Supreme Court was presented with the question of whether the mining company's worker's compensation insurer, Maryland Casualty, had a common law duty to warn the mine workers of the asbestos health risks upon becoming aware of those risks. *Id.* at 296.

The Montana Supreme Court reasoned that the vermiculite mining company had a general common law duty to provide a reasonably safe workplace and instrumentalities for employees regarding reasonably foreseeable risks of harm in

the workplace. *Id.* at 315. This obligation includes the duty to warn of unsafe conditions. *Id.* The Montana Supreme Court then reasoned that, because Maryland Casualty had assumed significant affirmative risk management services related to the mine's operations, Maryland Casualty also had assumed the mining company's duty to warn workers of unsafe conditions. *Id.* at 315-16.

*Maryland Casualty* does not support Plaintiffs argument, but, in fact, demonstrates the weaknesses of this case. The Court notes at the outset of this analysis that, unlike *Maryland Casualty*, no third-party relationship exists in which State Farm assumed a duty to Plaintiffs that originally fell upon another party. Application of *Maryland Casualty* would be only partially apposite. Taking the principle of what constitutes an assumption resulting in a special duty of care from *Maryland Casualty*, it is plain that Plaintiffs fail to demonstrate any such relationship.

The Montana Supreme Court began its analysis in *Maryland Casualty* by noting that the legislative purpose of workers' compensation insurance is to "protect and benefit workers." *Id.* at 315-16. Despite the legislative mandate for workers' compensation, the Montana Supreme Court noted that workers compensation insurers generally do not provide risk management activities and programs for the direct benefit of third-party workers. *Id.* Where insurers chose to participate in such programs, however, the "mere undertaking of affirmative workplace risk

–18–

management programs and activities incident to providing workers' compensation insurance" would alone be insufficient to "establish an act or intent to assume all or part of an employer's independent duty to provide workers with a reasonable safe working environment." *Id.* at 316.

The Montana Supreme Court established plainly that an insurer assuming a special duty of care presented a high bar. The Montana Supreme Court determined that Maryland Casualty had assumed part of the mining company's duty of care only because Maryland Casualty "was exclusively providing the only employee-specific, asbestos-disease-related professional medical evaluations, recommendations for more frequent radiological monitoring, and recommendations as to whether and under what circumstances those employees could continue to safely work." *Id.* at 318.

This case provides a stark contrast to *Maryland Casualty*. Unlike *Maryland Casualty*, no duty of a third-party exists to assume during a standard insurance purchase. The Montana Supreme Court has made clear that the insurer possesses the duty to procure the insurance requested by the client. *Bailey*, 300 P.3d at 1153; *Monroe*, 234 P.3d at 86; *Gunderson*, 468 P.3d. at *6. It is difficult to imagine what heightened duty of care Plaintiffs believe State Farm's agents assume when they choose to voluntarily explain and offer UIM coverage. State Farm's agents that explain UIM coverage are doing exactly what Plaintiffs complain should be

mandatory. There appears to be no reasonable duty of care left for State Farm to assume. Perhaps Plaintiffs want the Court to require that State Farm's clients knowingly waive UIM coverage, but the Montana Supreme Court has made clear that the duty of an insurer does not extend to those lengths. *Bailey*, 300 P.3d. at 1153.

The Court notes that the Montana legislature has not determined that UIM coverage should be required, as it has done with UM coverage. Mont. Code. Ann. § 33-23-201. The Court will not fault State Farm for complying with Montana's insurance statutes, absent an additional requirement imposed by the Montana Supreme Court. The Court determines that no special relationship or assumed duty of care exists between the Plaintiffs and their State Farm Agents. Absent a duty of care, the negligence claims must be dismissed. *Monroe*, 234 P.3d at 86 (noting Montana's status as a procurement state).

### B. Plaintiffs' Deceit and Bad Faith Claims

Plaintiffs' additional claims also fail. Plaintiffs premise their deceit claim on the failure of State Farm to advise its insureds that their policies lack UIM coverage. (Doc. 249 at 24-25.) "A deceit, within the meaning of subsection (1), is either . . . the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact[.]" Mont. Code Ann. § 27-1-712(2)(c). As established above, State Farm had no responsibility to advise its insureds about whether their individual polices lacked

UIM coverage. As a matter of law, State Farm did not suppress any information it was bound to disclose.

Plaintiffs' Bad Faith claim fails for the same reason. Montana common law imposes liability for bad faith when the concealment of material facts are "material to the subject of the trust or the duty of the fiduciary." *Gibson v. W. Fire Ins. Co.*, 682 P.2d 725, 741 (Mont. 1984). State Farm's agents did not develop a special relationship with Plaintiffs and, therefore, had no duty to "offer" and "explain" UIM coverage. Additionally, no facts demonstrate that State Farm made any attempt to conceal the existence of UIM coverage or whether Plaintiffs' policies included UIM coverage. State Farm acted reasonably with respect to Plaintiffs' auto insurance polcies. *See Blome v. First Nat'l Bank of Miles City*, 776 P.2d 525, 529-530 (Mont. 1989). Plaintiffs' deceit and bad faith claims fail.

Absent any remaining substantive claims, Plaintiffs' punitive damages claims fail as a matter of law. *See Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 344 (Mont. 2013);

## V.     Plaintiffs motion for class certification (Doc. 262)

In light of the Court's ruling on summary judgment against all named Plaintiffs, Plaintiffs motion for class certification (Doc. 262) must be denied as moot. The Court notes, however, that Plaintiffs fail to adequately demonstrate the Rule 23(a)(2) requirement for commonality. A common question "must be of such a

nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiffs' motion fails to demonstrate that the special relationship inquiry could be answered in one stroke. Whether a special relationship between an automobile insurer and its insured exists poses an individualized inquiry in these circumstances.

For the reasons set forth above, it is hereby **ORDERED** that:

1.  Plaintiffs' Motion to Certify Questions of Substantive Law (Doc. 211) is **DENIED;**

2.  Plaintiffs' Motions to Compel (Docs. 227 and 229) are **DENIED;**

3.  Plaintiffs' Motion for Leave to File a Second Amended Complaint (Doc. 260) is **DENIED, IN PART, AND GRANTED, IN PART**. Plaintiffs' motion is denied in all respects except to allow substitution of Randy Tarum for Danny Pedersen as personal representative for Robert Lindsay's estate. In that respect, Plaintiffs' motion is construed as a motion to substitute for a proper party;

4.  State Farm's motion for Summary Judgment (Doc. 214) is **GRANTED**; and

5.  Plaintiffs' Motion to Certify Class (Doc. 262) is **DENIED AS MOOT**.

DATED this 27th day of June, 2022.

6.  The Clerk of Court is directed to close this case.


_____
Brian Morris, Chief District Judge
United States District Court